IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| J & J MARTINDALE VENTURES, LLC, a Texas Limited Liability Company<br><br>      Plaintiff,<br><br>      v.<br><br>EAST END BREWING COMPANY, INC., a Pennsylvania Corporation<br><br>      Defendant. | Civil Action No.:  5:15-CV-00876 |

**DEFENDANT EAST END BREWING COMPANY INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND/OR VENUE OR, IN THE ALTERNATIVE TO TRANSFER THIS ACTION TO THE EASTERN DISTRICT OF PENNSYLVANIA ON THE GROUNDS OF FORUM NON CONVENIENS**

**Jackson Walker L.L.P.**

Mark H. Miller
Robert Soza
112 E. Pecan, Suite 2400
San Antonio, TX 78209
(210) 978-7700
(210) 978-7790 – Fax

**Norris McLaughlin & Marcus, P.A.**

Jeanne M. Hamburg*
Ami Bhatt*
875 Third Ave., 8th Floor
New York, NY 10022
(212) 808-0700
(212) 808-0844 – Fax

*Admitted Pro Hac Vice*

## TABLE OF CONTENTS

INTRODUCTION....................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 2

LEGAL ARGUMENT .................................................................................................. 6

I.    J&J HAS FAILED TO DEMONSTRATE THAT PERSONAL JURISDICTION
      SHOULD BE EXERCISED OVER EAST END ........................................................ 6

      A.    Standard on a Motion to Dismiss for Lack of Personal Jurisdiction .............. 6

            1.    *J&J Must Demonstrate That East End Has the Requisite Minimum
                  Contacts with Texas* ................................................................. 7

            2.    *J&J Must Also Demonstrate That Traditional Notions of Fair Play and
                  Substantial Justice Permit the Exercise of Jurisdiction Over East End* .. 8

      B.    Neither General Nor Specific Personal Jurisdiction Exist in This Case .......... 9

      C.    Traditional Notions of Fair Play and Substantial Justice Do Not Permit the
            Exercise of Personal Jurisdiction Over East End ........................................... 13

II.   THIS ACTION SHOULD BE DISMISSED, OR IN THE ALTERNATIVE
      TRANSFERRED, FOR LACK OF PROPER VENUE ............................................... 13

      A.    Venue is Improper in the Western District of Texas Thereby Requiring
            Dismissal of This Action ........................................................................... 14

      B.    In the Alternative, This Action Should Be Transferred to the Western
            District of Pennsylvania ............................................................................ 15

            1.    *This Action Could Have Been Brought in the Western District of
                  Pennsylvania* ................................................................. 17

            2.    *A Consideration of the Relevant Factors Weighs In Favor of Transfer to
                  the Western District of Pennsylvania* ................................... 17

      CONCLUSION .............................................................................................. 20

      Declaration of Scott Smith Attesting as to Lack of Contacts
      with Texas and Inconvenience of Litigating
      Matter in This Court....…………………………………………….....Submitted as Exhibit A

Defendant East End Brewing Company, Inc. ("East End"), by and through its undersigned counsel, hereby moves this Court to dismiss the Complaint of Plaintiff J & J Martindale Ventures, LLC ("J&J") pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and/or for improper venue pursuant to Rule 12(b)(3) or, in the alternative to dismissal of this action on both or either of the foregoing grounds, to transfer this action to the Western District of Pennsylvania, pursuant to 28 U.S.C. § 1404(a).

## INTRODUCTION

East End is a Pennsylvania brewery which does not have the requisite minimum contacts with the State of Texas constitutionally needed to confer personal jurisdiction. East End is a corporation organized under the laws of the Commonwealth of Pennsylvania, headquartered and doing business solely in Pittsburgh, Pennsylvania. East End has no physical presence in Texas, has not targeted or sold its products to Texas residents, and does not conduct any business in the state. Indeed, as the company is licensed only to brew and sell beers[1] in the Commonwealth of Pennsylvania, it is prohibited by law from operating its business or engaging in the sale of its products in Texas. Despite all this, J&J attempts to improperly haul East End into this forum presumably in an effort to force East End into a quick and unfavorable settlement by which it forfeits its prior and subsisting trademark rights. For all these reasons, East End moves for dismissal of this action for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2).

In addition to improperly alleging personal jurisdiction, the Complaint also wrongly pleads venue is in the Western District of Texas and, accordingly, East End also seeks dismissal of this action pursuant to Federal Rules of Civil Procedure 12(b)(3). Alternatively, should the

---

[1] For purposes of this motion, the term "beers" refers to stouts, ales, lagers and all other products which East End brews and sells.

**DEFENDANT EAST END BREWING COMPANY INC.'S**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**—Page 1

Court decline to dismiss this action due to either lack of personal jurisdiction or venue, or both, East End moves that this action be transferred to the Western District of Pennsylvania. As discussed herein and as set forth in the Declaration of Scott Smith, East End's Vice President, submitted herewith, relevant fact witnesses that J&J will call in this action, namely Mr. Smith as well as numerous third parties, are employed and live in the Commonwealth of Pennsylvania. All documents discoverable from East End and these third parties are located in the Commonwealth of Pennsylvania. Further, East End may lawfully sell beer only in the Commonwealth of Pennsylvania, and thus any activities undertaken by East End relevant to J&J's claims would have occurred only in Pennsylvania. Accordingly, it would be grossly inconvenient for East End to be subjected to litigation in the State of Texas and, if this case is not dismissed under Rule 12(b), then it should be transferred to the U.S. District Court for the Western District of Pennsylvania on the grounds of forum *non conveniens*.

## FACTUAL BACKGROUND

### *Nature of this Action*

J&J initiated this trademark action on or about October 9, 2015, seeking, *inter alia*, a declaratory judgment of J&J's non-infringement of East End's mark BIG HOP, which East End uses in connection with the sale of beers. *See* Complaint at ¶¶ 37-40. The action arises from J&J's use of the mark BIG HOPS, which it uses for three San Antonio, Texas restaurants and/or bars. *Id.* at ¶¶ 6-8. The Complaint also asks this Court to limit East End's rights in its BIG HOP mark to a 100 mile radius around Pittsburgh, Pennsylvania, and to declare that J&J has trademark rights in BIG HOPS in the rest of the nation, to the exclusion of East End's BIG HOP beers (which East End would be prohibited from selling, if the Court were to grant this relief, outside of the 100 mile radius around Pittsburgh). J&J seeks this relief granting it nationwide

rights except for the 100 mile radius around Pittsburgh, notwithstanding that it has no BIG HOPS restaurants anywhere else in the country apart from San Antonio, Texas.  *Id*. at ¶¶ 6-8.

### *The Parties*

As noted, J&J operates bars/restaurants under the name BIG HOPS in San Antonio, Texas.  J&J opened its first BIG HOPS location in 2013.  Complaint at ¶¶ 6-8.  J&J is also the owner of a U.S. trademark registration for BIG HOPS.  *Id*. at ¶ 14.

East End is a corporation organized under the laws of the Commonwealth of Pennsylvania whose sole brewing facility is located in Pittsburgh, Pennsylvania.  *See* Declaration of Scott Smith in Support of Motion to Dismiss ("Smith Dec.") at ¶¶ 2-3.  Since its founding in 2004, East End has grown from a small microbrewer in a 4,000 square foot facility to a brewpub and taproom occupying a 17,000 square foot space in Pittsburgh.  *Id.* at ¶ 4.  East End has a second location, also located in Pittsburgh, which acts as a growler shop and taproom.  *Id.*  It produces over 35 types of beer a year including one variety under the name BIG HOP.  *Id.* at ¶ 5.

East End commenced use of its BIG HOP mark long before J&J opened the first of its BIG HOPS locations.  East End began using the BIG HOP designation in connection with beers over a decade ago, in December 2004 (*see id.* at 6), almost a decade before J&J first opened its BIG HOPS restaurant for business (Complaint at ¶ 14).  On October 18, 2013, East End applied for trademark registration of BIG HOP with the U.S. Trademark Office.  The examining attorney of the U.S. Trademark Office assigned to East End's application cited J&J's prior registration for BIG HOPS as a possible bar to registration to East End's BIG HOP mark.  To overcome this potential bar to registration, East End attempted to reach a coexistence agreement with J&J by which each could own coexisting federal registrations and operate nationally in connection with

their respective goods and services (beers, on the one hand, and restaurants, on the other).[2] Much to its surprise, however, such efforts to resolve the matter amicably resulted in J&J's institution of this action.  After East End's counsel corresponded with one Texas law firm acting as counsel for J&J, another counsel with a different firm precipitously filed this Complaint in this Court (*compare* Complaint at Exhibit D *with* p. 12).  This action was filed in Texas rather than Pennsylvania, where personal jurisdiction clearly lies over East End, seemingly to leverage a favorable settlement by hauling East End into a geographically remote forum which would increase East End's costs, legal fees and inconvenience in litigating this matter.

### East End's Lack of Contacts With Texas

As noted, East End has no physical contacts with Texas. East End's two facilities in Pennsylvania represent East End's only places of business.  Smith Dec. at ¶ 7.  East End does not own or maintain any offices, facilities, real property, personal property or chattel in Texas.  *Id.* at ¶ 8.  It does not have any business facilities, any employees, or any registered agents in Texas. *Id.* at ¶ 16.  It does not own any real estate or maintain any other property in Texas, nor does it have any bank accounts in this state.  *Id.* at ¶ 17.  East End does not maintain a telephone line in Texas.  *Id.* at ¶ 18.  Nor has East End paid any taxes in Texas or made any filings with any state agencies in the state.  *Id.* at ¶ 19.  Moreover, East End has not negotiated any contracts nor otherwise conducted any business in Texas.  *Id.* at ¶ 20.  In addition, East End does not mail or distribute printed advertisements or promotional materials to Texas residents, conduct any advertising in or targeted to Texas or otherwise target Texas residents through any promotional efforts. *Id.* at ¶ 21.

---

[2] J&J inappropriately and in violation of F.R.E. 408 includes East End's counsel's email communications with counsel for J&J (which are designated "privileged and confidential" or as "for settlement purposes only") as exhibits to the Complaint.

**DEFENDANT EAST END BREWING COMPANY INC.'S
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**—Page 4

One reason for East End's absence of contacts with Texas is that it is not licensed to sell its alcoholic products in that state.  In particular, a brewer located in the Commonwealth of Pennsylvania such as East End must obtain the necessary license to manufacture and sell its beers.  More specifically, East End owns a Manufacturer of Malt Beverages License (the "License") from the Pennsylvania Liquor Control Board, which permits East End to manufacture and distribute its beers in Pennsylvania.  *Id.* at ¶ 10.  The License also permits East End to serve and sell its beers on its premises.  *Id*. East End has obtained this License *only* in the Commonwealth of Pennsylvania, thus meaning that it cannot operate in any other state— including Texas—in the United States.  *Id.* at ¶ 11.  East End's License does *not* permit it to manufacture or sell its beers outside the Commonwealth of Pennsylvania.  *Id.* at ¶ 12.  Indeed, Texas itself requires that any brewers of beer obtain a permit or license from the State of Texas to manufacture, sell, and dispense beers in this state.  *See e.g*., Tex. Alco. Bev. Code Ann. §§ 11.01, 12.01, 61.01, 74.01 (Vernon 2007).  East End has not obtained any such permit or license from the State of Texas, making it unlawful for East End to sell beer here.  Smith Dec. at ¶ 13.

In addition to selling beer at its facilities, East End also distributes its beers to nearby bars and restaurants.  *Id*. at ¶ 14.  However, *none* of East End's beers (including its BIG HOP beer) are distributed outside of the Pennsylvania region nor has East End currently entered into a relationship with a wholesaler/distributor authorized to engage in the sale of beers outside of the Commonwealth of Pennsylvania.  *Id*.  Thus East End does not itself or through a distributor/wholesaler engage in brewing, taproom sales, wholesale sales, distribution or any other kinds of operation or sales outside of the Commonwealth of Pennsylvania.  *Id.* at ¶ 15.[3]

---

[3] As discussed *infra* at pp. 8-9, the question of whether this Court has personal jurisdiction over East End is conceptually distinct from whether East End is entitled to a federal registration for its BIG HOP mark.  Though East End does not operate its brewing facilities or engage in sales of its products in Texas, Texas residents have visited its brewery as have residents from other states.  However, merely because East End's trademarks including BIG HOP

**DEFENDANT EAST END BREWING COMPANY INC.'S**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**—Page 5

While East End maintains a website that can be accessed by residents in Texas, the website merely contains information as to its beers; none can be purchased through the site, because as noted, East End cannot lawfully sell its alcoholic products outside the Commonwealth of Pennsylvania. *Id.* at ¶ 22. The website does permit customers to purchase merchandise. *Id.* at ¶ 23. However, East End has sold only a total of four (4) pieces of its merchandise (*see id.* at ¶ 24), none of which bears the BIG HOP mark, to residents of Texas; such sales represent a *de minimus* amount of sales activity not sufficient to give rise to general jurisdiction.[4] Further none of these sales were related to or under East End's BIG HOP brand. *Id.* at ¶ 25. In sum, East End has no contacts with the State of Texas sufficient to give rise to personal jurisdiction.

## LEGAL ARGUMENT

As set forth below, J&J's Complaint should be dismissed for lack of personal jurisdiction over East End and due to improper venue. As an alternative, on the basis of forum *non conveniens*, this action should be transferred to the Western District of Pennsylvania.

**I.     J&J HAS FAILED TO DEMONSTRATE THAT PERSONAL JURISDICTION SHOULD BE EXERCISED OVER EAST END**

### A.     Standard on a Motion to Dismiss for Lack of Personal Jurisdiction

When a nonresident defendant seeks dismissal based on a lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating the district court's jurisdiction over the defendant." *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999), citing *Wilson v.*

---

enjoy a reputation outside of Pennsylvania, does not mean that J&J or any other party can haul East End to a Texas court as East End has no minimum contacts with Texas and has not purposefully availed itself of doing business in Texas. *See Gurglepot, Inc. v. New Shreve, Crump & Low, LLC*, No. C13-6029, 2014 WL 2744283, *3 (W.D.Wa., June 17, 2014) (rejecting plaintiff's argument that general personal jurisdiction over defendant existed due to defendant's nationwide reputation, stating "[t]here is no law to support the argument that reputation implies continuous and systematic contacts…").

[4] East End's records reveal a total of four (4) sales of East End merchandise to residents of Texas for the period from 2011 to present. Smith Dec. at ¶ 24. These sales include the purchase of a gift card and two Dickies-brand work shirts bearing a logo for East End Brewing Co. *Id.* at ¶ 25.

**DEFENDANT EAST END BREWING COMPANY INC.'S**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**—Page 6

*Belin*, 20 F.3d 644, 648 (5th Cir. 1994).  The power of a state to assert personal jurisdiction over a nonresident defendant is limited by the due process clause.  "Its requirements are satisfied when the nonresident defendant has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Gardemal*, 186 F.3d at 595, citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154 (1945) (further citation and quotation omitted).

To determine whether a federal district court has personal jurisdiction over a nonresident defendant, the district court considers the extent to which the laws of the forum state and constitutional due process permit exercising jurisdiction over the defendant.  *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); *Command-Aire Corp. v. Ontario Mechanical Sales & Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992).  The Texas Long Arm statute reaches as far as is constitutionally permissible.  Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 2008); *Command-Aire Corp.*, 963 F.2d at 93.  Therefore, the personal jurisdiction question is simply an inquiry concerning constitutional due process.  *Command-Aire Corp.*, 963 F.2d at 93; *see Hall v. Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. 408, 413, 104 S.Ct. 1868 (1984).  Under the due process clause, a court may exercise personal jurisdiction over a defendant when (1) the defendant has purposely availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999) (further citations omitted).

### 1.    *J&J Must Demonstrate That East End Has the Requisite Minimum Contacts with Texas*

Under the minimum contacts analysis, a court must determine whether the nonresident defendant has purposefully availed itself of the privilege of conducting activities within the

forum state, thus invoking the benefits and protections of the state's laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174 (1985) (further citation omitted). The purposeful-availment requirement prevents a nonresident defendant from being unfairly hauled into distant forums with which there is little or no connection, and insures that the defendant's contacts result from its purposeful contact, not the unilateral activity of the plaintiff or a third party. *Id*. at 475-76; *Wilson*, 20 F.3d at 649.

The nonresident defendant's contacts can give rise to two types of jurisdiction:  (1) general jurisdiction, established through a defendant's continuous and systematic contacts with the forum; or (2) specific jurisdiction, established when the cause of action arises from or relates to defendant's contacts with the forum. *See Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002). General jurisdiction focuses solely on the relationship between the defendant and the forum, and requires a plaintiff to show that defendant has continuous, systematic, and substantial contacts with the forum. *Dickson Marine Inc. v. Panalpina, Inc*., 179 F.3d 331, 339 (5th Cir. 1999). In contrast, under specific jurisdiction, the minimum contact analysis focuses on the relationship between the defendant, the forum, and the litigation. *Id*. at 337. Specific jurisdiction exists when a defendant purposefully directs its activities at the forum state and the plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum. *Id.*; *see Wilson*, 20 F.3d at 649.

### 2. *J&J Must Also Demonstrate That Traditional Notions of Fair Play and Substantial Justice Permit the Exercise of Jurisdiction Over East End*

Even where a plaintiff is able to establish sufficient minimum contacts between the defendant and the forum state, it still must also establish that the exercise of personal jurisdiction over a nonresident defendant does not offend traditional notions of fair play and substantial justice. *Ruston Gas Turbines, Inc. v. Donaldson Co. Inc.*, 9 F.3d 415, 421 (5th Cir. 1993). In

determining whether the exercise of jurisdiction is proper in this context, the Court examines the following five factors:  (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the forum state's interest; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the states in furthering substantive social policies.  *Id.*

Applying the applicable law to the facts of this particular case demonstrates that the action against East End should be dismissed for lack of personal jurisdiction.

### B.    Neither General Nor Specific Personal Jurisdiction Exist in This Case

In the present matter, there is utterly no basis to assert general or specific jurisdiction over East End.  A review of the Complaint in this action demonstrates that J&J has not established the "continuous, systematic, and substantial contacts" required for the Court to validly exercise general personal jurisdiction over East End.  Nor has it alleged any valid contacts between East End and Texas that relate to J&J's alleged claims.  Indeed, J&J's Complaint contain no allegation whatsoever of any connection between East End and Texas.  As discussed above, among other things, East End is not licensed to do business in Texas, does not maintain any offices or employees in Texas, and does not advertise or sell any products in Texas. J&J has failed to allege, and indeed it cannot, that East End has systematic, continuous and substantial contacts with Texas.  Even the most basic due diligence on the part of J&J prior to initiating suit would have revealed this fact.

Further, any sales of general merchandise East End may have consummated with Texas residents are insufficient to meet the general jurisdiction requirements.  *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000) (determining that a court lacked general jurisdiction over defendant whose contacts included isolated sales to the state, shipment

preparations, and field service visits there); *see also Rodriguez v. Am. Eurocopter Corp.*, No. H-06-1069, 2006 WL 2238896 (S.D. Tex., Aug. 3, 2006) (finding seven transactions conducted in Texas were insufficient to establish general jurisdiction).   Indeed, East End's sales to Texas residents—a total of four sales to four individuals in the past five years, none of which involve BIG HOP branded merchandise—have been sporadic and minimal.   Further such sales were the result of Texas residents initiating contact with East End, and not the result of any purposeful or targeted activity on the part of East End.   Such sales are *de minimus* and wholly unrelated to the claims set forth in J&J's Complaint.   East End does not have the requisite systematic, continuous or significant contacts with Texas, and accordingly, there is no basis for the Court to exercise general jurisdiction over East End.

Similarly there is no basis for an exercise of specific jurisdiction.   In arguing to the contrary, J&J confuses and conflates East End's trademark rights with the question of personal jurisdiction.   As the basis for its claim that jurisdiction is proper, J&J incorrectly relies on the fact that Texas residents are aware of East End and its products.   J&J cites to the number of followers and commenters from across the county East End has obtained on social media sites such as Twitter, Instagram, and a beer review site by the name of Beer Advocate.[5]   *See* Complaint at ¶ 23.   However, all of these facts point only to the fact that East End is entitled to obtain federal registration for its BIG HOP mark.   East End's entitlement to such registration is based, in part, on the reputation of East End and its BIG HOP trademark outside the Commonwealth of Pennsylvania, including to the extent that Texas residents have traveled to Pennsylvania and purchased and consumed East End's beers.

---

[5] The Beer Advocate website is not owned or run by East End.   Rather, it is a third-party website through which consumers can post reviews of beers produced by various breweries from across the world.   Smith Dec. at ¶ 27.

**DEFENDANT EAST END BREWING COMPANY INC.'S**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**—Page 10

Thus, notwithstanding J&J's improper equation of the concepts of entitlement to federal registration and personal jurisdiction, Texas residents' awareness of and fondness for East End's products fails to create a basis for the Texas courts to exercise jurisdiction over East End. Having a nationwide reputation is insufficient to satisfy the requirements of demonstrating contacts with the forum state sufficient to permit the exercise of personal jurisdiction. *See Gurglepot, Inc.*, 2014 WL 2744283 at *3 ("[t]here is no law to support the argument that reputation implies continuous and systematic contacts…" and thus finding no basis to assert personal jurisdiction over the defendant). Any awareness in Texas of East End is the result of Texas residents seeking out East End and its products within the Commonwealth of Pennsylvania. *See* Smith Dec. at ¶ 28. East End does not have a brewing facility in Texas, does not sell or distribute its beers in Texas, and has not specifically targeted and marketed its beers to Texas residents. Stated another way, Texas residents have become aware of and traveled to Pittsburgh to visit East End's brewery and consume its products but East End has not "traveled" to Texas and in fact the scope of East End's License makes it unlawful for East End to brew, sell, or distribute its beers in Texas. Such contact is clearly insufficient to provide the basis to establish specific or generic jurisdiction.

Indeed, J&J concedes that East End has a regional physical presence limited to Pennsylvania. Despite having cited to the number of followers of East End on these social media sites as the basis for the assertion of personal jurisdiction, in its Complaint, J&J immediately discounts the veracity of East End's social media presence and following in assessing East End's physical presence. *See* Complaint at ¶ 24-26. J&J then asserts that East End does business only locally (*i.e.*, in Pittsburgh and a 100 mile radius therefrom)[6] in selling beers, ales and stout (*see*

---

[6] East End does not concede that its business presence is limited only to Pittsburgh and a 100 mile radius therefrom. However, it is clear that East End has no presence in the State of Texas as Plaintiff admits in its Complaint.

**DEFENDANT EAST END BREWING COMPANY INC.'S**
<u>**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**</u>—Page 11

*id.* at ¶ 26), thereby entirely undermining its claim that the assertion of personal jurisdiction by this Court is remotely proper.  By J&J's own admissions in its Complaint, there is no basis for this Court to assert personal jurisdiction over East End.

Moreover, while East End does have an informational website concerning its beers and a social media presence that is accessible by anyone (including Texas residents) having Internet access, operation of such a site does not establish general or specific jurisdiction over East End. Visitors to East End's website are unable to purchase any of East End's beers, including beers sold under the BIG HOP brand, through the website.  As the Fifth Circuit has previously held, maintaining a "passive" website—with company and product information but without any online ordering system or evidence of products purchased by residents of the forum—is an insufficient basis for general or specific jurisdiction.[7] *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 345 (5th Cir. 2002) (defendant's "operation of a website containing company and product information and links to its U.S. subsidiaries also does not provide sufficient grounds for the exercise of personal jurisdiction"); *Mink*, 190 F.3d at 336-337 (affirming motion to dismiss for lack of personal jurisdiction, where there was "no evidence that [defendant] conducted business over the Internet with forum residents or by entering into contracts over the Internet.").

As set forth in the Smith Declaration, as well as the complete absence in J&J's Complaint of any allegations of connections with Texas, East End has not "purposefully availed" itself of the privilege of conducting business in Texas.  Therefore East End is not subject to personal jurisdiction in Texas.  For these reasons, East End respectfully moves for dismissal of this action for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2).

---

[7] As discussed on pp. 8-9, the few sales made to Texas residents through the merchandise store on East End's site were not for goods sold under the BIG HOP mark, are unrelated to Plaintiff's claims, and thus would not provide a basis for the assertion of specific jurisdiction.

**DEFENDANT EAST END BREWING COMPANY INC.'S**
<u>**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**</u>—Page 12

C.   **Traditional Notions of Fair Play and Substantial Justice Do Not Permit the Exercise of Personal Jurisdiction Over East End**

In view of the lack of contacts between East End and the State of Texas, the exercise of jurisdiction over East End would not comport with due process requirements.  However, even if the Court were to consider notions of "fair play and substantial justice," it would be clear that none of the factors considered in this Circuit's test would support an exercise of personal jurisdiction over East End.

First, litigating this matter in the Western District of Texas would unquestionably be a significant burden to East End, whose only places of business are located in Pennsylvania with no offices, business or other presence in Texas.  Given that East End has no meaningful contact with the State of Texas, forcing it to litigate in this state is fundamentally unfair.  Second, given that the subject matter at issue in this litigation involves trademark law and the Lanham Act—a federal question—Texas has no greater interest in this dispute than Pennsylvania or any other state, particularly given the lack of specific ties in this matter to Texas.  Further, as East End has absolutely no connection to Texas relevant to this case, there is no judicial efficiency that would be achieved by litigating this matter in this forum.  Finally, J&J's interest in obtaining relief and the interest of the states in efficient judicial administration do not require jurisdiction over East End in Texas.  Rather, as East End is a resident of Pennsylvania, it could be amenable to suit in that jurisdiction.  Accordingly, it would be unfair to haul East End into a Texas court in this case.

## II.   THIS ACTION SHOULD BE DISMISSED, OR IN THE ALTERNATIVE TRANSFERRED, FOR LACK OF PROPER VENUE

If a lawsuit is filed in an improper judicial district, a court may dismiss the suit upon timely objection or, in the interest of justice, may transfer the case to a district where the lawsuit may have been brought.  28 U.S.C. §1406(a) provides that "the district court of a district in

which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it would have been brought."  Pursuant to Fed. R. Civ. P. 12(b)(3) a party may seek dismissal of an action based on improper venue. As with a challenge to personal jurisdiction, Plaintiff bears the burden of establishing that venue is proper once an objection has been raised.  *Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 753 (S.D. Tex. 2002).

For the reasons set forth below, in the present action, J&J fails to sufficiently demonstrate in its Complaint that venue in the Western District of Texas is proper.  Instead J&J only makes the bare assertion that "venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c)."  Complaint at ¶ 5.  On that basis, dismissal is appropriate.  In the alternative, should this action not be dismissed, East End respectfully requests that this action be transferred to the Western District of Pennsylvania.

### A.    Venue is Improper in the Western District of Texas Thereby Requiring Dismissal of This Action

Pursuant to 28 U.S.C. § 1391(b), an action may only be brought in:  (1) a judicial district where any defendant resides; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) a judicial district in which any defendant may be found, if there is no other district in which the action may otherwise be brought.  Section 1391(c) of Chapter 28 of the U.S. Code provides that a corporate defendant may be deemed to reside in any judicial district in which is subject to personal jurisdiction at the time the action is commenced.

The purpose of 28 U.S.C. § 1391 is to ensure that the plaintiff does not select a venue that is unfair or inconvenient to the defendant.  Plaintiff has flouted the intent of the statute in bringing the case in Texas.  A consideration of the facts in this matter makes clear that it would

be highly inconvenient and unfair to make East End litigate this action in the Western District of Texas. As has been discussed at length above, East End does not operate any part of its business nor sell any of its beer products in Texas; again, it is not licensed to produce, sell, or distribute such products in Texas. Aside from completing a handful of sales of its East End merchandise to four Texas residents over the past five years through its website, East End has not engaged in any other activity nor maintained any other presence in Texas. Rather, East End resides only in Pittsburgh, Pennsylvania, which is located within the Western District of Pennsylvania.

Consequently, the only other way J&J could establish proper venue is to show that a "substantial" part of the events or omissions allegedly giving rise to Plaintiff's claims actually have occurred in Texas. Considering that East End has not engaged in any acts in Texas, let alone any "substantial" portion of activities, related to J&J's allegations, this ground for maintaining this action in Texas also fails. Indeed, the Complaint fails to disclose any portion of the dispositive events arising in Texas. Rather, the only connection between Texas and the facts of this case is J&J. To the extent that East End perpetrated any acts giving rise to liability (which it denies), it would have undertaken them in Pennsylvania. Thus, the requisite "substantial" portion of the dispositive events underlying this case does not arise in Texas.

As venue does not lie under any prong of 28 U.S.C. § 1391, East End respectfully moves for dismissal of this action for lack of proper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a).

### B.     In the Alternative, This Action Should Be Transferred to the Western District of Pennsylvania

Should the Court choose not to dismiss this action based on lack of personal jurisdiction and lack of proper venue, East End moves, in the alternative, that this Court transfer this action to the Western District of Pennsylvania, in accordance with 28 U.S.C. § 1404(a). Section

1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Federal courts employ a two-part analysis when determining whether an action should be transferred. The first step involves a determination of whether the action could have been brought in the district to which transfer is sought. *Carruth v. Michot*, No. 15-CA-189-SS, 2015 WL 6506550, *8 (W.D. Tex., Oct. 26, 2015). If the suit could have been filed in the destination venue, the Court then evaluates whether the party requesting the transfer has demonstrated that the "convenience of the parties and witnesses" requires transfer of the action, based on a consideration of several private and public interest factors. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839 (1947). A defendant must show "good cause" in order for the court to grant a motion to transfer venue. *In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 (5th Cir. 2008). This is a more lenient standard than the stricter forum *non conveniens* dismissal standard which requires that the relevant "factors must substantially outweigh plaintiffs' choice of venue." *Id*. at 314. This "good cause" requirement is met when a defendant shows that the transferee venue is more convenient than the original venue. *Id*. at 315.

In determining whether such "good cause" exists, courts consider four private interest factors, including: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id*. (citations omitted). In addition, four public interest factors are also considered: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the venue with the law that will govern

the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *Id.*

### 1.  *This Action Could Have Been Brought in the Western District of Pennsylvania*

A civil action can be brought in:  "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…; or (3) if there is no judicial district in which an action may otherwise be brought…any judicial district in which any defendant is subject to the court's personal jurisdiction."  28 U.S.C. § 1391(b).  Under this standard, undoubtedly this matter could have been brought in the Western District of Pennsylvania.  East End is incorporated in the Commonwealth of Pennsylvania, and its brewery and all of its business operations are located in Pittsburgh, located within the jurisdiction of the Western District of Pennsylvania.  As a result, East End is subject to the personal jurisdiction of that district.  Further, as J&J's claims focus on East End's use of, promotion of, and sale under its BIG HOP mark, a substantial part (if not all) of the events giving rise to the claims at issue occurred in the Western District of Pennsylvania.  Thus this action could have and should have been brought in that district.

### 2.  *A Consideration of the Relevant Factors Weighs In Favor of Transfer to the Western District of Pennsylvania*

Both the private and public factors considered in connection with a Section 1404(a) motion to transfer weigh in favor of a transfer of this action to the Western District of Pennsylvania.  Given that East End is located in Pittsburgh, the majority of the evidence in this case will likely come from Pennsylvania sources.  Smith Dec. at ¶¶ 29-30.  East End's offices and its business records, including documents related to its first dates of sale of beers under the

BIG HOP mark, sales and promotion activities, are located within the Western District of Pennsylvania.  *Id.* at ¶¶ 31-32.  Numerous third party witnesses, as well as documents relevant to this litigation in their possession, custody or control, are located in the Commonwealth of Pennsylvania.  Specifically, East End's employees, its distributors, and a majority of other parties related to its sales, promotion and distribution channels are located in Pennsylvania.  *Id.* at ¶¶ 33-36.  Thus witnesses that East End anticipates will have testimony relevant for this action, other than those associated with J&J, are all likely to be located in the Commonwealth. *Id.*  Such witnesses also would be subject to the compulsory process of the Western District of Pennsylvania.  As a result, transfer to the Western District of Pennsylvania would permit the parties to compel the attendance of any of these non-party witnesses—something not available if the action is litigated in the Western District of Texas, as such witnesses would be more than 100 miles from this district.  *See In re Volkswagen of Am.*, 545 F.3d at 316.

Further, when compared to continuing this action in this district (located approximately 1,500 miles from Pittsburgh), transferring this matter to the Western District of Pennsylvania would reduce the cost and inconvenience of attendance for witnesses to provide testimony in this action.  *See In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004) ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.").  The cost of attendance of willing witnesses has been recognized as "the most important factor under § 1404."  *Bascom v. Maxim Integrated Prods., Inc.,* 534 F.Supp.2d 700, 704 (W.D.Tex. 2008) (citations and marks omitted).  Thus, as the majority of people, documents and any physical sources of proof will be located in the Western District of Pennsylvania, transfer is appropriate.  *See Carruth*, 2015 WL 6506550 at *9.

Moreover, a consideration of the public interest factors also demonstrates that transfer is appropriate. Greater congestion in the forum in which the action was instituted compared to the destination forum can weigh in favor of transfer. The Western District of Texas is typically one of the busiest districts in the country. *See Carruth*, 2015 WL 6506550 at *10 (noting that Western District of Texas was the third busiest district in the country in 2014 and found such factor weighed in favor of transfer). Data compiled by the Administrative Office of the United State Courts indicates that for the 12-month period ending September 30, 2014, 3,403 civil cases were filed in the Western District of Texas. *See* United States Courts, "Judicial Business 2014 Tables," Table C-3, *available at* http://www.uscourts.gov/statistics-reports/judicial-business-2014-tables (accessed January 21, 2016).[8] For the same time period, 2,573 cases were filed in the Western District of Pennsylvania, or approximately 24.4 percent less than filed in this district. *See id.* Such congestion in the Western District of Texas favors transfer to the Western District of Pennsylvania.

Additionally, a consideration of the local interests weighs in favor of transfer. Any activities undertaken by East End in relation to J&J's claims, including any purported wrongdoing, were committed in Pittsburgh. Transfer is proper where none of the relevant facts occurred in the division where the action was filed. *See In re Volkswagen AG*, 371 F.3d at 206. Finally, as J&J's claims involve an application of federal trademark law, both districts would be equally familiar with the relevant law at issue, and thus does not require that this action remain pending in the Western District of Texas.

---

[8] As the data presented was compiled by the Administrative Office of the U.S. Courts, a government entity, such information is considered self-authenticating, and the court may take judicial notice of this information. *See Lloyd v. Birkman*, -- F.Supp.3d --, 2015 WL 5202687, *8 (W.D. Tex. 2015), *citing In re Katrina Canal Breaches Consol. Lit.*, 533 F.Supp.2d 615, 632 (E.D.La. 2008) ("The Fifth Circuit has determined that courts may take judicial notice of governmental websites"); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (noting that a certain letter of approval was published on the website of the National Mediation Board, an administrative agency, and thus judicial notice could be taken of the information contained therein).

In sum, if East End's motion to dismiss is not granted, it is clear that transfer of this case to the Western District of Pennsylvania is appropriate.

## CONCLUSION

There are neither sufficient minimum contacts with the State of Texas to support specific jurisdiction nor continuous, systematic and substantial contacts with the State to support general jurisdiction.  Moreover, a consideration of "fair play and substantial justice" also makes clear that it would be unfair and highly inconvenient to litigate this matter in Texas.  As a result, pursuant to Federal Rule of Civil Procedure 12(b)(2), this Court should dismiss this case for lack of personal jurisdiction over East End Brewing Company, Inc.  In addition, for all of the reasons set forth above, this action should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), or in the alternative transferred pursuant to 28 U.S.C. § 1404(a), on the grounds that this action was instituted in an improper forum.

Respectfully submitted,

**Jackson Walker L.L.P.**

By: ____/s/ Ami Bhatt____
Mark H. Miller
Texas Bar #14099200
mmiller@jw.com
Robert Soza
Texas Bar #18869300
rsoza@jw.com
112 E. Pecan, Suite 2400
San Antonio, TX 78209
(210) 978-7700
(210) 978-7790 – Fax

-and-

**Norris McLaughlin & Marcus, P.A.**

Jeanne M. Hamburg*
jhamburg@nmmlaw.com

Ami Bhatt*
abhatt@nmmlaw.com
875 Third Ave., 8th Floor
New York, NY 10022
(212) 808-0700
(212) 808-0844 – Fax
*Admitted Pro Hac Vice

**ATTORNEYS FOR DEFENDANT
EAST END BREWING COMPANY, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on January 25, 2016, the foregoing document was electronically filed with the clerk of the U.S. District Court, Western District of Texas using the electronic case filing system of the court, which will send notice of such filing to all counsel of record.

<u>/s/ Ami Bhatt</u>
Ami Bhatt