IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| J & J MARTINDALE VENTURES, LLC, a Texas Limited Liability Company<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>EAST END BREWING COMPANY, INC., a Pennsylvania Corporation<br><br>　　　　Defendant. | Civil Action No.: 5:15-CV-00876 |

**DEFENDANT EAST END BREWING COMPANY INC.'S REPLY
BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS FOR LACK
OF PERSONAL JURISDICTION AND/OR VENUE OR, IN THE ALTERNATIVE
TO TRANSFER THIS ACTION TO THE EASTERN DISTRICT OF
PENNSYLVANIA ON THE GROUNDS OF FORUM NON CONVENIENS**

**Jackson Walker L.L.P.**

Mark H. Miller
Robert Soza
112 E. Pecan, Suite 2400
San Antonio, TX 78209
(210) 978-7700
(210) 978-7790 – Fax

**Norris McLaughlin & Marcus, P.A.**

Jeanne M. Hamburg*
Ami Bhatt*
875 Third Ave., 8th Floor
New York, NY 10022
(212) 808-0700
(212) 808-0844 – Fax

*Admitted Pro Hac Vice*

**PRELIMINARY STATEMENT**

Before this Court is a dispute that, if not settled by the parties, would have been resolved by a proceeding before the U.S. Trademark Office, Trademark Trial and Appeal Board ("TTAB"). The TTAB would have decided the parties' respective rights to federally register BIG HOP/BIG HOPS for their respective goods and services, based on each party's first sale date anywhere in the nation. Regrettably, instead of being the subject of a settlement or an efficient, small-scale proceeding which would have left J&J's Texas trademark common law rights intact, this case is in federal district court in the wrong state.

J&J baselessly claims East End asserts exclusive common law trademark rights in Texas. However, East End's counsel *never protested J&J's use of its BIG HOPS mark in Texas and never made any threat* of infringement litigation; instead, East End's counsel offered to amicably resolve the matter to avoid instituting a TTAB proceeding which would in any event have left J&J's Texas common law rights in place. East End does not "implicitly," explicitly or otherwise claim common law trademark rights superior to J&J's in Texas. *See* Declaration of Scott Smith in Further Support of East End's motion (hereinafter, "Smith Reply Dec.") at ¶¶ 2-3.

Moreover, J&J wrongly argues that East End's "purposeful" contact with J&J—that is, East End's inadmissible settlement offer—gives rise to personal jurisdiction over East End. J&J provides no support for its position, and for good reason: if there were such authority, every declaratory judgment trademark case could be heard in the state of residence of a prospective plaintiff who received a privileged settlement proposal for trademark coexistence. Given the frequency with which such communications are transmitted, such a rule would expose countless companies and individuals to jurisdiction in venues with which they had no contact. It would discourage settlement of trademark registration disputes. Courts have been loath to penalize

those attempting to reach amicable settlements rather than precipitously filing court actions; accordingly, even declaratory judgment disputes arising from infringement claims are routinely transferred *out* of the accused infringer's home state to that of the "true plaintiff" on personal jurisdiction and venue grounds.

J&J's incorrectly argues that East End makes an "implicit" claim of Texas rights, which implicates Texas law, creating personal jurisdiction over East End. This is factually incorrect and confuses numerous unrelated legal concepts. Moreover, given that East End concedes Texas common law trademark rights to J&J, the only issue presented is the right to *federal* trademark registration under the *federal* trademark law (the Lanham Act). This Court need only decide whether (1) East End has sufficient minimum contacts with Texas to support personal jurisdiction; and (2) given the absence of any relevant issue of Texas law or Texas facts, and based on the location of documents and third party witnesses in Pennsylvania, this case (if not dismissed) should be heard by the District Court for the Western District of Pennsylvania.[1]

## ARGUMENT

I.  **J&J CANNOT RELY ON INADMISSIBLE SETTLEMENT DISCUSSIONS**

East End reiterates its objection to J&J's reliance on inadmissible settlement communications. Federal Rule of Evidence 408 excludes from evidence "conduct or a statement made during compromise negotiations." Fed. R. Ev. 408(a)(2); *see also Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (recognizing that in disputes involving trademark rights, the Federal Rules of Evidence provide "that evidence of promising to accept...a valuable consideration in...attempting to compromise a claim is not admissible to prove

---

[1] The U.S. District Court for the Eastern District of Pennsylvania may determine that there is no subject matter jurisdiction given that East End has not challenged J&J's right to use the BIG HOPS mark thus presenting a justiciable controversy. Rather, East End has challenged only J&J's BIG HOPS federal registration based on East

liability for the claim. Nor is evidence of conduct or statements made in compromise negotiations.") (internal marks and citations omitted).

J&J impermissibly relies on East End's statements—marked clearly as settlement communications (*see, e.g.*, D.E. 1-5 at pp. 2-3)—made during settlement discussions in support of its (incorrect) position that East End implicitly claimed use of its mark in Texas and attempted to curtail J&J's trademark rights in San Antonio, Texas, and that East End has now altered its position concerning its ties to the State of Texas. *See*, *e.g.*, Pltf. Br. pp. 4-5, 8-9, 11. Such use of settlement discussions is improper and should be disregarded by the Court.

## II. EAST END'S COUNSEL'S TRANSMISSION OF INADMISSIBLE CORRESPONDENCE PROPOSING SETTLEMENT IS NOT SUFFICIENT TO GIVE RISE TO PERSONAL JURISDICTION OVER EAST END

In its settlement correspondence to J&J, East End's counsel proposed a coexistence agreement whereby the parties both federally register their respective marks. J&J contends that this emailed correspondence subjects East End to personal jurisdiction in the State of Texas. Tellingly, J&J relies exclusively on these settlement discussions as East End's purposeful activity directed at the State of Texas.

Courts have repeatedly held that the transmission of cease and desist letters to a party in another jurisdiction does not subject the sender to that jurisdiction absent other contacts with the forum state. *See*, *e.g.*, *Ham v. La Cienega Music Co.*, 4 F.3d 413, 416 (5th Cir. 1993) (granting motion to dismiss for lack of personal jurisdiction even where defendant had written a cease and desist letter to plaintiff concerning infringement of its copyrights); *Sablatura v. Kokopelli*, 98 U.S.P.Q.2d 1919, 2010 WL 4394250, *2 (S.D. Tex. 2010) (finding no personal jurisdiction over defendant, who had sent cease and desist letter to plaintiff but had not engaged in any purposeful

---

End's *priority of use, regardless of the fact that this priority arises from use in Pennsylvania.* Thus, this case is most appropriately decided in a petition to cancel registration heard by the TTAB.

activities directed at the forum state). "Courts have repeatedly held…that cease-and-desist letters are insufficient to confer specific personal jurisdiction, because principles of fair play and substantial justice afford a party sufficient latitude to inform others of its rights without subjecting itself to jurisdiction in a foreign forum." *DNH, LLC v. In-N-Out Burgers*, 381 F.Supp.2d 559, 564 (E.D. La. 2005) (citations and marks omitted); *see also Red Wing Shoe Co.*, 148 F.3d at 1361 (Fed. Cir. 1998) (finding that transmission of three letters informing plaintiff of infringement and requesting cessation of infringing activities was not sufficient to subject patentee to jurisdiction in that state).

The single case J&J cites to support its position is inapposite. This is the unpublished decision of *SGS Thomson Micro-Electronics, Inc. v. Ferris*, 55 F.3d 632, 1995 WL 313932 (5th Cir. 1995) (unpublished). In that case, the Fifth Circuit upheld a finding of personal jurisdiction because the plaintiff's causes of action arose directly from the defendant's cease and desist letter. *Id*. at *3. Specifically, plaintiff alleged claims, *inter alia*, of tortious harassment, extortion and defamation in the forum state based on the content of defendant's letter to plaintiff. *Id*. at *1, 3. In contrast, East End's settlement correspondence is not the basis of any tort claims against J&J and, indeed, does not relate to the merits of J&J's claims against East End. *See Ham*, 4 F.3d at 416 (finding that merits of copyright question did not arise out of defendant's cease and desist letter concerning infringement of copyrights). Plaintiff's request that this Court be guided by the distinguishable decision in *SGS-Thomson* asks the Court ignore a wealth of clear case law in which correspondence to enforce a party's trademark rights was found insufficient to confer jurisdiction.

Moreover, J&J's mischaracterizes East End's proposal of a coexistence agreement. Courts have repeatedly found such proposals insufficient to confer personal jurisdiction over a

non-resident defendant. *See Red Wing Shoe Co.*, 148 F.3d at 1361 (finding that an offer to enter into a trademark license agreement along with demand letter did not confer jurisdiction as "[a]n offer to license is more closely akin to an offer for settlement of a disputed claim rather than an arms-length negotiation in anticipation of a long-term continuing business relationship); *Catalyst Medium Four, Inc. v. CardShark, LLC*, No. 14-CV-1007, 2015 WL 1412591 (W.D. Tex., Mar. 26, 2015) (holding that defendant sending a cease and desist letter to plaintiff, offering trademark license, and engaging in unsuccessful licensing discussions insufficient to subject defendant personal jurisdiction in Texas). "[M]erely contracting with a resident of a forum state is insufficient to subject the nonresident to [a] forum's jurisdiction. This is particularly true when all of the contacts with the forum state occur for no other reason than the mere fortuity that plaintiff happens to be a resident of the forum." *DNH, LLC*, 381 F.Supp.2d at 564 (finding negotiations to enter into settlement agreement insufficient to confer jurisdiction over California-based defendant), *citing Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (internal marks omitted).

East End's correspondence was a settlement proposal. East End's statements concerning its BIG HOP mark were made for the purposes of demonstrating its right to registration. It made no infringement claim and did not threaten J&J's use of its mark through a federal court filing, or in any other fashion. Contrary to J&J's contentions (Pltf. Br. p. 4), *at no point* did East End claim that East End had rights superior to J&J in Texas, "implicitly" or otherwise. To be clear, East End *does not claim such rights. See* Smith Reply Dec. at ¶ 2. Rather, East End's counsel noted that, barring an amicable settlement concerning East End's trademark registration rights, it would be forced to petition to cancel J&J's registration, which it preferred not to do. Claims for cancellation are typically filed in the U.S. Trademark Office, TTAB, *not* in federal court. The

Board is charged *exclusively* with determining the defendant's right to registration, not defendant's right to use a mark or whether defendant's use of the mark infringes the plaintiff's mark. *See*, *e.g.*, TTAB Manual of Procedure § 102.01 (identifying jurisdiction of TTAB as "The Board is empowered to determine only the right to register. The Board is not authorized to determine the right to use, nor may it decide broader questions of infringement or unfair competition"); *FirstHealth of the Carolinas Inc. v. CareFirst of Md. Inc.*, 479 F.3d 825, 81 U.S.P.Q.2d 1919, 1921 (Fed. Cir. 2007) (quoting Board manual); *Board of Trustees of University of Alabama v. Pitts*, 107 U.S.P.Q.2d 2001, 2022 (TTAB 2013) (noting that Board has no jurisdiction to consider question of infringement as "[t]he function of the Board is to determine whether there is a right to secure or maintain a registration; the Board can do nothing to prevent parties from using a mark in a certain manner").

In TTAB proceedings, a petitioner's ability to cancel the registrant's mark does not require an inquiry into *where* a petitioner may have first used the mark in issue, but rather merely *if the petitioner was first to use the mark anywhere in the nation, thus establishing priority.*[2] *See*, *e.g.*, *Baroid Drilling Fluids, Inc. v. Sun Drilling Prods.*, 24 U.S.P.Q.2d 1048 (TTAB 1992) (granting cancellation where petitioner demonstrated prior use of the mark and likelihood of confusion based on similarity of marks and goods at issue); *Real Property Mgmt., Inc. v. Marina Bay Hotel*, 221 U.S.P.Q. 1187 (TTAB 1984); *Daniel P. Matthews v. Black Clouds*, Cancellation No. 92058978, 2015 WL 4779216 (TTAB, July 31, 2015).

Further, were East End to file a cancellation proceeding, and should the TTAB grant East End's petition to cancel, East End would not gain common law rights in Texas and J&J

---

[2] Federal courts also apply this standard in determining claims to cancel trademark registrations based on priority of use. *See*, *e.g.*, *Nat'l Cable Television Ass'n, Inc. v. American Cinema Editors, Inc.*, 937 F.2d 1572 (Fed. Cir. 1991); *Finck Cigar Co. v. El Duque Grp., Inc.*, No. 99-CA-0817, 2001 WL 1910547, at *2 (W.D. Tex. June 28, 2001)

would not forfeit any common law rights in Texas. *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 819 (1st Cir. 1987) (recognizing that cancellation of a trademark registration does not extinguish common law rights); *Santana Prods., Inc. v. Compression Polymers, Inc.*, 8 F.3d 152, 155 (3d Cir. 1993) (stating that "a party's right to use a trademark is not dependent on registration"). In sum, East End's transmission of settlement proposal correspondence to *avoid* a TTAB case is not a purposeful contact directed at Texas sufficient to confer personal jurisdiction over East End in Texas.

### III. THE LAW OF TEXAS IS NOT RELEVANT TO THIS DISPUTE AND IS NOT DISPOSITIVE OF THE QUESTION OF PERSONAL JURISDICTION

J&J argues that because the law of Texas is relevant to determine senior use in Texas, personal jurisdiction lies in Texas. *See* Pltf. Br. pp. 11-18. This confuses the issues of an appropriate forum under the doctrine of forum *non conveniens* and personal jurisdiction. First, choice of law has nothing to do with personal jurisdiction. *See Verizon Directories Corp. v. Cohen, Jayson & Foster, P.A.*, No. 306-CV-2394, 2007 WL 2162105, at *3 (N.D. Tex., July 27, 2007) (clarifying that even where contract between parties provided for application of Texas law, such consent to application of forum state's law did not provide basis for finding personal jurisdiction as choice of law provision differs from choice of forum provision), *citing Stuart v. Spademan*, 772 F.2d 1185, 1195 (5th Cir. 1985). Second, no relevant issue of Texas law is presented in this case. The only "dispute" concerns federal trademark registration rights.

### IV. PENNSYLVANIA NOT TEXAS IS THE CORRECT VENUE UNDER THE LAW OF FORUM *NON CONVENIENS*

As noted, East End does not dispute J&J's common law rights in Texas nor claim it has common law rights in Texas superior to J&J's (or indeed at all) (*see* Smith Reply Dec. at ¶¶ 2-3).

---

(cancelling trademark of Florida party based on Texas party's prior use and demonstration of likelihood of confusion).

Thus, J&J's demonstrative table (Pltf. Br. pp. 14-15) is based on an erroneous supposition. Every "factor" there weighing in favor of a Texas forum assumes "the controlling issue in this lawsuit is whether or not Defendant can show continual use of BIG HOP in San Antonio that predates Plaintiff's first use." Pltf. Br. p. 14. Once this issue is taken off the table, there are no advantages to litigating in Texas other than to serve the convenience of J&J. The questions presented are federal trademark law (Lanham Act), not state law, issues. A Texas federal court is no better suited to decide those questions than a federal court in Pennsylvania. Given that no issues arise from the application of state law, San Antonio witnesses and documents attesting as to J&J's common law rights in San Antonio, Texas (or anywhere in the State) are not needed.

Even assuming for the sake of argument that East End's Texas common law trademark rights *were* in issue, courts routinely transfer declaratory judgment actions from the accused infringer's home forum to the trademark owner's where the trademark owner lacks contacts with the State. This is because courts are loath to discourage trademark owners from attempting to negotiate compromises that allow them to enforce their trademark rights, in favor of precipitously filing federal court infringement cases. *See Kinetic Concepts, Inc. v. Connetics Corp.*, No. 04-CA0237, 2004 WL 2026812, at *3 (W.D. Tex., Sept. 8, 2004) (declining to exercise jurisdiction over the matter and dismissing it because the court found that plaintiff had improperly filed a declaratory judgment action in attempt to gain advantage of preferred forum, subverting rule that the victim of harm to trademark rights "is generally given the initial right to choose the forum in which the infringement case will be heard"); *Capco Int'l, Inc. v. Haas Outdoors, Inc.*, No. 3-CV-2127G, 2004 WL 792671, at *4 (N.D. Tex., Apr. 9, 2004) (dismissing matter where anticipatory litigation deprived "true plaintiff" of right to choose forum where action should be heard); *see also Red Wing*, 148 F.3d at 1361 (stating that finding jurisdiction

based on offer of license would be "contrary to fair play and substantial justice by providing disincentives for the initiation of settlement negotiations"); *Finck Cigar Co., Inc. v. El Duque Group, Inc.*, No. 99-0817, 1999 WL 33290620, * 2 (W.D. Tex., Oct. 29, 1999) ("The Court noted that a cease and desist letter might be seen as an offer of settlement, and its neither fair, nor efficient, to provide disincentives to settlement."). Though as noted this is not a trademark infringement case, but, rather, a dispute over the right to federal registration, the same principle follows. This case, if not dismissed, should be transferred to a court where jurisdiction lies.

That federal court is the U.S. District Court for the Eastern District of Pennsylvania, where multiple third parties and documents are located. East End's employees are not the only witnesses East End would call, as J&J wrongly contends. Multiple third party witnesses are not employees of East End and can attest to East End's use of BIG HOP for beers; all reside or do business in the Commonwealth of Pennsylvania. *See* Smith Dec. at ¶¶ 33-35.

## CONCLUSION

Defendant East End Brewing Company, Inc. respectfully requests that its motion be granted.

Respectfully submitted,

**Jackson Walker L.L.P.**

By: ___/s/ Ami Bhatt___
Mark H. Miller
Texas Bar #14099200
mmiller@jw.com
Robert Soza
Texas Bar #18869300
rsoza@jw.com
112 E. Pecan, Suite 2400
San Antonio, TX 78209
(210) 978-7700
(210) 978-7790 – Fax

-and-

**DEFENDANT EAST END BREWING COMPANY INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER**—Page 9

**Norris McLaughlin & Marcus, P.A.**

Jeanne M. Hamburg*
jhamburg@nmmlaw.com
Ami Bhatt*
abhatt@nmmlaw.com
875 Third Ave., 8th Floor
New York, NY 10022
(212) 808-0700
(212) 808-0844 – Fax
*Admitted Pro Hac Vice

ATTORNEYS FOR DEFENDANT
EAST END BREWING COMPANY, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 18, 2016, the foregoing document was electronically filed with the clerk of the U.S. District Court, Western District of Texas using the electronic case filing system of the court, which will send notice of such filing to all counsel of record.

/s/ Ami Bhatt
Ami Bhatt