UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| J & J MARTINDALE VENTURES, LLC, | § | No. 5:15–CV–876–DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| EAST END BREWING COMPANY, INC., | § | |
| | § | |
| Defendant. | § | |

ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION; DENYING AS MOOT MOTION TO TRANSFER

Before the Court is Defendant East End Brewing Company, Inc.'s

("East End") Motion to Dismiss for Lack of Personal Jurisdiction and Alternative

Motion to Transfer to the Eastern District of Pennsylvania (Dkt. # 11).  Pursuant to

Local Rule 7(h), the Court finds this matter suitable for disposition without a

hearing.  After carefully considering the memoranda in support of and in

opposition to the Motion, the Court **GRANTS** Defendant's Motion to Dismiss and

**DENIES AS MOOT** Defendant's Motion to Transfer (Dkt. # 11).

BACKGROUND

Plaintiff J&J Martindale Ventures, LLC ("J&J") is a limited liability company whose principal place of business is San Antonio, Texas.  ("Compl.," Dkt. # 1 ¶ 1.)  East End is a Pennsylvania corporation whose principal place of business is Pittsburgh, Pennsylvania.  (Id. ¶ 2.)

According to J&J, it was created on July 31, 2012, to provide bar and restaurant services under the name BIG HOPS.  (Compl. ¶ 6.)  J&J opened its first BIG HOPS location in San Antonio, Texas on March 18, 2013, and currently operates BIG HOPS at three different locations in San Antonio, Texas.  (Id. ¶¶ 6–8.)  J&J sells various bar-related paraphernalia, including beer glasses and growlers, bearing the BIG HOPS label, and also sells wearable merchandise such as shirts and caps bearing the label.  (Id. ¶ 10.)  On October 18, 2013, J&J filed Trademark Application No. 86/095,951 with the United States Patent and Trademark Office ("USPTO") to register the mark BIG HOPS for "restaurant and bar services."  (Compl. ¶ 14.)  On June 3, 2014, the USPTO issued Registration No. 4,543,126 to J&J for BIG HOPS.  (Dkt. # 1, Ex. A.)

East End is a microbrewery in Pittsburgh, Pennsylvania, and was created on February 9, 2004.  (Compl. ¶ 17–18.)  East End operates a brewpub and taproom at one location in Pittsburgh, and a growler shop and taproom in a second Pittsburgh location.  (Dkt. # 11 at 3.)  East End does not operate any other business

2

locations.  Sometime after February 9, 2004, East End began brewing and selling a beer called BIG HOP in Pennsylvania.  (Id.; Compl. ¶ 17–18.)[1]  According to J&J, East End filed Trademark Application No. 86/604,350 with the USPTO on April 21, 2015 to register the mark BIG HOP for "beers, ales and stout."  (Id. ¶ 19.)  The USPTO rejected the application, based upon J&J's existing Registration No. 4,543,126.  (Id. ¶ 20.)

 Following the USPTO's rejection, counsel for East End sent an e-mail to Rob Martindale, an individual associated with J&J, seeking to create a coexistence agreement for the trademarked BIG HOPS name, and the name BIG HOP.  (Dkt. # 1, Ex. B.)  After learning that Mr. Martindale was represented by counsel, counsel for East End sent a second e-mail to counsel for J&J, again offering to prepare a coexistence agreement for BIG HOPS and BIG HOP.  (Dkt. # 1, Ex. C.)  In relevant part, the e-mail stated as follows:

> Your client's trademark registration for BIG HOPS, based on use since 2013, and covering restaurant and bar services, was cited against my client's recent U.S. trademark application.  As our client has used BIG HOP in commerce prior to your client, its registration is vulnerable to cancellation should our client bring a petition to cancel it based on its prior rights.
>
> However, rather than challenging your client's registration based on our client's prior rights in BIG HOP, our client would prefer to settle this matter amicably. . . .

(Dkt. # 1, Ex. 3.)  East End's counsel sent a third e-mail to J&J's Counsel,

---

[1] East End brews and sells approximately 35 varieties of beer.  (Dkt. # 11 at 3.)

attaching sales reports to demonstrate that East End has sold BIG HOP products since 2004.  (Dkt. # 1, Ex. 4.) [2]

J&J construed this correspondence as a bad-faith threat, and brought suit against East End in the Western District of Texas, seeking declaratory judgment that: (1) J&J is entitled to exclusive rights to the mark BIG HOPS, excepting the area forming a one-hundred mile radius from Pittsburgh, Pennsylvania (Compl. ¶¶ 33–36); (2) BIG HOPS does not violate the Lanham Act, 15 U.S.C. § 1051 et seq., or otherwise constitute unfair competition or trademark infringement (id. ¶¶ 37–40); and (3) any offering by East End of "beers, ales and stout" outside the one-hundred mile radius from Pittsburgh constitutes trademark infringement (id. ¶¶ 41–45) and unfair competition (id. ¶¶ 46–50).  J&J also seeks all of Defendant's profits for use of the BIG HOP mark outside of Pittsburgh and

---

[2] East End argues that the e-mails are settlement negotiations and should be excluded from consideration pursuant to Federal Rule of Evidence ("FRE") 408. FRE 408 prevents the admission of information shared during settlement negotiations "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement."  Fed. R. Evid. 408(a).  The correspondence between East End and J&J is akin to settlement negotiations.  See Lyondell Chem. Co. v. Occidental Chem. Corp., 608 F.3d 284, 295 (5th Cir. 2010) ("Litigation need not have commenced for Rule 408 to apply.")  Nonetheless, the Court will consider this correspondence, because it is not used here to prove or disprove the validity of the trademark claim, and forms the only plausible basis for a finding of personal jurisdiction.

the one-hundred mile radius from Pittsburgh pre-dating its June 3, 2014 issuance of registration, as well as punitive damages, and attorneys' fees and costs.  (Id. at 10–11.)

On January 25, 2016, East End timely filed the instant Motion to Dismiss for Lack of Personal Jurisdiction and Alternative Motion to Transfer to the Eastern District of Pennsylvania.  (Dkt. # 11.)  J&J filed a response on February 8, 2016 (Dkt. # 12), and East End filed a reply on February 18, 2016 (Dkt. # 14).

LEGAL STANDARD

Where a nonresident defendant moves to dismiss a suit for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), a court must determine whether it has personal jurisdiction over the defendant by "first determin[ing] whether the long arm statute of the forum state permits exercise of jurisdiction[,] . . . then determin[ing] whether such exercise comports with due process."  Ham v. La Cienega Music Co., 4 F.3d 413, 415 (5th Cir. 1993).  "The Texas long-arm statute extends to the limits of the Constitution," and a Texas court's "inquiry is therefore limited to the reach of the Fourteenth Amendment's Due Process Clause."  Stroman Realty, Inc. v. Antt, 528 F.3d 382, 385 (5th Cir. 2008).  "The Fourteenth Amendment allows a court to assert personal jurisdiction over defendants who have meaningful 'contacts, ties, or relations' with the forum state.  Such contacts can give rise to general or specific jurisdiction."  Id. (quoting

Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)).  However, the Fourteenth Amendment also "limit[s] the power of a State to assert in personam jurisdiction over a nonresident defendant."  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413–414 (1984) (citing Pennoyer v. Neff, 95 U.S. 714 (1878)).

Where a defendant has "'continuous and systematic general business contacts' with the forum state," the forum may exercise general personal jurisdiction over the defendant.  Antt, 528 F.3d at 385 (quoting Helicopteros, 466 U.S. at 415 n. 9) (finding the Texas district court improperly exercised general jurisdiction over officials from California and Florida who did not have an office in Texas or sufficient contacts with Texas giving rise to general jurisdiction).  Where a Defendant's contacts "are less pervasive, courts may exercise 'specific jurisdiction' in 'a suit arising out of or related to the defendant's contact with the forum.'"  Antt, 528 F.3d at 385 (quoting Helicopteros, 466 U.S. at 415 n. 9).

The plaintiff bears the burden of proof to demonstrate personal jurisdiction.  Nuovo Pignone, PsA v. Storman Asia M/V, 310 F.3d 374, 378 (5th Cir. 2002); Elly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 854 (5th Cir. 2000).  Courts in the Fifth Circuit evaluate whether exercise of both general and specific personal jurisdiction is consistent with the Due Process Clause by applying a three-part test, considering:

> (1) [W]hether the defendant has minimum contacts with the forum
> state, i.e., whether it purposely directed its activities toward the forum
> state or purposely availed itself of the privileges of conducting
> activities there; (2) whether the plaintiff's cause of action arises out of
> or results from the defendant's forum-related contacts; and
> (3) whether the exercise of personal jurisdiction is fair and reasonable.

Nuovo Pignone, 310 F.3d at 378 (citing Burger King Corp. v. Rudzewicz, 471 U.S.

462, 474 (1985)).  Where a defendant's contacts with the forum state are

insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth

Amendment, the court must dismiss the case for lack of personal jurisdiction.  Id.

## ANALYSIS

East End asserts that this Court cannot exercise personal jurisdiction,

because it does not have sufficient minimum contacts with Texas to justify the

exercise of jurisdiction.  (Dkt. # 11.)  East End does not own or maintain offices,

facilities, or real or personal property in Texas.  ("Smith Decl.," Dkt. # 11, Ex. 1,

¶¶ 8, 16, 17.)  East End does not maintain a telephone in Texas, pay taxes or file

documents with any agencies in Texas, have any contracts in Texas, conduct any

business in Texas, distribute printed advertisements in Texas, or otherwise market

its products in Texas.  (Id. ¶¶ 19–21.)  East End maintains a website through which

it sells merchandise, and has sold a total of four pieces of merchandise to Texas

residents; none of the merchandise has borne the BIG HOP logo.  (Id. ¶¶ 23–25.)

East End is only licensed to sell beer in the Commonwealth of Pennsylvania, and

does not have a permit or license to sell its beers in Texas.  (Id. ¶¶ 10–15.)

Plaintiff does not dispute any of these facts.  (Dkt. # 12.)

I.  Whether East End is subject to general personal jurisdiction

For the Court to find it has general personal jurisdiction over a

defendant, the plaintiff must make a showing that the defendant has "'continuous

and systematic general business contacts' with the forum state."  Antt, 528 F.3d at

385 (quoting Helicopteros, 466 U.S. at 415, n. 9.).  J&J does not offer any fact or

argument that the Court has general personal jurisdiction over East End, and

accordingly fails to make a prima facie case for general jurisdiction.  (See Dkt.

# 12.)  Accordingly, the Court finds there are insufficient contacts between Texas

and East End to satisfy the requirements of the Due Process Clause of the

Fourteenth Amendment, and cannot constitutionally exercise general jurisdiction

over East End.

II.  Whether East End is subject to specific personal jurisdiction

"Specific jurisdiction exists where the 'litigation results from the

alleged injuries that arise out of or relate to' the defendant's activities in the forum

state."  Nuovo Pignone, 310 F.3d at 379, n. 3 (quoting Burger King, 471 U.S. at

472).  The Court should determine whether Defendant is subject to personal

jurisdiction by evaluating whether it has such minimum contacts with the forum

state that it "could reasonably anticipate being haled into federal court."  Antt, 528

F.3d at 386 (citing <u>World Wide Volkswagon Corp. v. Woodson</u>, 444 U.S. 286, 297

(1980)).  These minimum contacts must be such that they do "not offend

'traditional notions of fair play and substantial justice.'"  <u>Ham</u>, 4 F.3d at 415

(quoting <u>Asahi Metal Indus. v. Superior Court</u>, 480 U.S. 102, 105 (1987)).  The

Court will apply the Fifth Circuit's three-part test to determine whether it is

entitled to exercise personal jurisdiction over East End.

   A. <u>Whether East End has established minimum contacts with Texas</u>

        A party has sufficient minimum contacts justifying the exercise of

specific personal jurisdiction if it takes "some act whereby [it] 'purposely avails

itself of the privilege of conducting activities within the forum state, thus invoking

the benefits and protections of its laws.'"  <u>Nuovo Pignone</u>, 310 F.3d at 379

(quoting <u>Burger King</u>, 471 U.S. at 474) (finding an agreement to supply a vessel

equipped to deliver a multi-million dollar shipment of goods in Louisiana

established a sufficient "minimum contact" with Louisiana to justify the exercise

of specific personal jurisdiction over causes of action arising out of that

agreement).  A party need only engage in a "single substantial act" to justify "the

exercise of specific jurisdiction in an action arising from or related to such acts."

<u>Ham</u>, 4 F.3d at 415–16.  However, this act must be "[p]urposeful forum-directed

activity."  <u>Id.</u> at 415.

J&J argues that East End has sufficient minimum contacts with Texas to justify specific personal jurisdiction based upon the Fifth Circuit's unpublished opinion in SGS-Thomson Micro-Electronics, Inc. v. Ferris, 55 F.3d 632 (5th Cir. 1995).  The plaintiff in Ferris sued the defendant, a California resident, in the Northern District of Texas after receiving a letter from defendant requesting the payment of money in exchange for use of his copyrighted ideas.  Id. at *1.  The defendant's letter cited court holdings and explicitly threatened litigation if the plaintiff did not pay him $19,000.00.  Id.  The court found that the letter, though only a single action, was "[p]urposeful forum-directed activity," and a "substantial act," permitting "the exercise of specific jurisdiction in an action arising from or related to" the letter.  Id. (quoting Ham, 4 F.3d at 415).  However, the Fifth Circuit found that sufficient minimum contacts arose not from copyright issues raised by the letter, but from the letter's allegedly tortious harassment of a forum resident. Ferris, 55 F.3d at *3 (finding that defendant's letter explicitly threatened litigation if plaintiff did not pay a sum of money, and such contact gave the court jurisdiction over plaintiff's tortious harassment claim).  Ferris is distinguishable from the facts of the instant case.  J&J does not allege a cause of action for any sort of unlawful conduct arising out of East End's letters, but rather seeks declaratory judgment that East End has infringed upon its trademark.  In so doing, J&J argues that East End's

e-mails are sufficient minimum contacts to justify the exercise of personal

jurisdiction in a trademark infringement action.

        The Fifth Circuit has found merely sending a letter "is insufficient to

establish personal jurisdiction" where the letter does not put "a party on notice that

it might be sued." Antt, 528 F.3d at 386–87 (finding that sending a cease-and-

desist order and subsequently corresponding with plaintiff's attorneys did not

create sufficient contacts to support exercise of specific jurisdiction, where

Defendant "did not avail itself of any of Texas's protections" by sending the order

or engaging in subsequent correspondence). In Ham, for example, the defendant, a

California resident, sent a letter to plaintiff, claiming plaintiff's song infringed

upon his own copyrighted song. 4 F.3d at 415. The parties exchanged conflicting

expert musicology reports, and the plaintiff filed suit for declaratory judgment.

The Court, however, dismissed the case, finding that the resolution of the

declaratory judgment action "depends solely upon whether [the song] infringed

copyrights owned by [defendant]," and that sending a letter, even where the letter

"forms the basis for [plaintiff's] allegations about the existence of a live

controversy, in no way relates to the merits of the copyright question and thus does

not support personal jurisdiction in Texas." Ham, 4 F.3d at 416.

        Likewise, in Sablatura v. Kokopelli, Inc., the plaintiff sued defendant,

whose principal place of business was New Hampshire, for declaratory judgment

11

in the Southern District of Texas after receiving a cease-and-desist letter alleging trademark infringement.  No. H–10–472, 2010 WL 4394250, at *1 (S.D. Tex. Oct. 29, 2010).  The court found that mere receipt of such a letter was an insufficient contact to permit the Court to exercise personal jurisdiction over the trademark action.

The reasoning of <u>Sablatura</u> and <u>Ham</u> is persuasive here.  J&J does not plead "tort causes of action . . . based upon the content of [East End's] letter."  <u>Sablatura</u>, 2010 WL 4394250, at *2.  Rather, J&J argues that East End's series of three e-mails, through which it attempted to negotiate an agreement regarding the scope of each party's rights to use the marks BIG HOPS and BIG HOP, constitute sufficient contacts to bring a trademark suit.  While East End's e-mails state its preference to avoid challenging J&J's trademark before the USPTO—an action East End is legally entitled to take—the statements are insufficient to give rise to specific personal jurisdiction in a declaratory judgment suit for trademark infringement.  Accordingly, J&J has not met its burden to demonstrate that East End has made sufficient contacts with the Western District of Texas to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment.

B.  <u>Whether the cause of action arises out of forum-related contacts</u>

As explained above, the cause of action does not arise directly from East End's forum-related contacts.  <u>See</u> <u>e.g.</u>, <u>Ham</u>, 4 F.3d at 415.  East End's beer

production and sales in Pennsylvania form the basis for the controversy between the parties; the three e-mails East End sent to J&J may have alerted J&J to the existence of the controversy, but were not themselves forum-related contacts by which East End availed itself of the protections of Texas.  East End states, and J&J does not dispute, that East End has never sold BIG HOP beer outside of the state of Pennsylvania, and has only made four website sales of East End merchandise to Texas residents, none of which bore the BIG HOP logo.  (Smith Decl. ¶¶ 10–15, 23–25; Dkt. # 12.)  Accordingly, J&J's action for declaratory judgment does not arise out of East End's contacts with Texas, and exercise of jurisdiction would not satisfy the requirements of the Due Process Clause of the Fourteenth Amendment.

   C.  <u>Whether exercise of personal jurisdiction is fair and reasonable</u>

        Where a plaintiff demonstrates sufficient "minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." <u>Nuovo Pignone</u>, 310 F.3d at 382.  When determining whether exercise of jurisdiction is fair, the court should consider, among other things, "the burden on the nonresident defendant." <u>Id.</u> (citing <u>Felch v. Transportes Lar-Mex SA de CV</u>, 92 F.3d 320, 324 (5th Cir. 1996)).  Scott Smith, the Vice-President of East End, provided a declaration explaining that East End is a small, family-owned business which would be harmed by the cost of litigating in Texas.  (Smith Decl. ¶ 30.)  According

to Smith, East End's offices, business records, and witnesses are located outside of the Western District of Texas.  (Id. ¶¶ 31–35.)  Accordingly, these factors weigh against assertion of jurisdiction over East End.

D. Conclusion

J&J failed to meet its burden of proof to demonstrate that East End had sufficient minimum contacts with the state of Texas such that it would reasonably anticipate being haled to Court in the Western District of Texas; likewise, J&J failed to demonstrate that the instant controversy arose out of East End's contacts with Texas.  Sending e-mails to negotiate trademark rights, where East End did not sell any items bearing the BIG HOP mark in the state of Texas, and has not otherwise engaged in any activity in the state of Texas that would interfere with the BIG HOPS trademark, is not sufficient activity to create the necessary minimum contacts with Texas for this Court to exercise jurisdiction over it.  Further, J&J's cause of action does not arise out of East End's actual contacts with the state of Texas.  Accordingly, J&J failed to meet its burden to show that the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment, and this Court has no personal jurisdiction over East End. Because this Court does not have jurisdiction over the matter, it need not address East End's Alternate Motion to Transfer to the Eastern District of Pennsylvania (Dkt. # 11).

<u>CONCLUSION</u>

For the reasons stated above, this Court does not have personal jurisdiction over East End.  The Motion to Dismiss is **GRANTED**, and the Alternate Motion to Transfer is **DENIED AS MOOT** (Dkt. # 11).  This case is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, April 27, 2016.

_____
David Alan Ezra
Senior United States Distict Judge